|, JAMES F. MCKAY III, Judge.
Following the death of Abraham Man-heim, the general partner of a limited partnership known as Manheim Antique Galleries, a bitter family dispute resulted in the liquidation of the business. This lead to litigation regarding the succession of Abraham Manheim as well as the liquidation of the business. On November 5, 1999, the trial court appointed John P. Hammond, a retired lawyer with the law firm of Montgomery, Barnett, Brown, Read, Hammond and Mintz, as liquidator.[1]
The liquidator was charged with the duty of winding down the affairs of Man-heim Antique Galleries. Before beginning this task, Mr. Hammond posted a five million dollar bond. Mr. Hammond determined that in order to obtain the highest dollar amount for the assets of Manheim Antique Galleries, it would be best to operate the business for as long as possible in order to maximize the sale of inventory and conclude the liquidation with discount sales and auctions when it could no longer be operated in its usual fashion. The inventory was appraised at $6 million while the business’ real estate holdings were appraised at $2.55 million. |2 Ultimately, the sale of the business’s inventory brought in $16 million, while the sale of its real estate raised $4.425 million. However, throughout the liquidation process, the liquidator was faced with the constant threat of litigation from the various heirs, many of whom had competing and conflicting interests.
On March 16, 2001, the liquidator filed a motion to fix his fee and a memorandum in support thereof. Sometime thereafter, Mr. Hammond learned that his fee would be opposed. Thereupon, he retained attorney Fred Herman to represent him in this fee dispute. After a lengthy hearing on April 18, 2002, the trial court fixed the liquidator’s fee at five percent of all assets to be calculated by including “all property on hand from the date of inception of the liquidation and any proceeds derived therefrom.”[2]
On October 11, 2002, a hearing was held on the motion to homologate the provisional accounting, including the application of the five percent liquidator’s fee. There was no objection to the accounting and the trial court ordered the homologation of the accounting as presented by the liquidator. After a hearing on October 31, 2002, the trial court rendered a judgment setting the liquidator’s fee at $1,129,608.00. The various Manheim heirs now appeal.[3]
*838 On appeal, the appellants raise the following assignments of error: 1) the district court’s decision awarding the liquidator a fee of $1,129,608.00 is manifestly erroneous; 2) the district court erred when interpreting the decision of Judge Pro Tempore Mickey P. Landry that the liquidator’s fee should be five ^percent of the liquidation’s gross receipts rather than five percent of the sums distributed to the owners; 3) the district court erred when opining that the decision of Judge Pro Tempore Mickey P. Landry was a final judgment and could not be revised; 4) the district court erred in not holding that the liquidator’s request for a fee of $480,000.00 was a judicial admission as to the sum to which he was entitled; 5) the district court erred when not accepting into evidence Cohen proffered exhibits 5 and 6 which indicate that Judge Pro Tempore Mickey P. Landry should have recused himself; 6) the district court’s decision awarding the liquidator a fee of five percent is manifestly erroneous; and 7) the district court erred in accepting into evidence a letter from the Honorable Max N. Tobias, Jr.
Assignment of Error No. 1
In the instant case, the trial court awarded the liquidator a fee of $1,129,608.00, which amounted to five percent of the amount that the liquidation raised. La. R.S. 12:142(D) provides that when a court appoints a liquidator, the court may determine “conditions as to bond and compensation as it may deem proper.” Accordingly, there is no set amount that a liquidator is to be compensated for his services. Louisiana Code of Civil Procedure Article 3351, which deals with successions, sets a fee of two and one-half percent of the amount of the inventory as compensation for the executor or administrator of the estate. However, “[t]he court may increase the compensation upon a proper showing that the usual compensation is inadequate.” In Pasternack’s For Liquidation v. Samuels, 446 So.2d 969 (La.App. 3 Cir.1984), the Third Circuit held that a trial court has much |4discretion in setting a liquidator’s fee and the fee award can be disturbed only if that discretion has been abused.
In the instant case, Mr. Hammond had to perform a variety of duties, including the making of all management decisions for the business, setting compensation and bonuses of the employees, reviewing the monthly financial statements, reviewing the monthly itemized bank accounts, obtaining the necessary appraisals of the assets, obtaining an audit of the business, keeping track of over twenty-five hundred items of inventory, selecting and negotiating contracts with auction houses, determining when and where to conduct auctions, determining when and where to hold discounted sales and the amount of the discounts to be allowed to customers, contracting with an advertising agency to advertise the discount sales, handling claims of customers, attending auctions in New York City and New Orleans, signing and filing income tax returns of the business as well as other functions.
Due to the complex nature of this particular liquidation, a certified public accountant, Mr. Wilson Lagraize, was hired to assist Mr. Hammond in accounting and financial matters and was requested to perform an audit. Furthermore, at virtually every step of the liquidation he was met with objections, threats of suits and court filings by various former partners of the Manheim Antique Galleries. In spite of this, the liquidator obtained $12,000,000.00 more than the appraised value of all of the assets of the business. Due to the com *839 plex nature of this liquidation as well as the exceptional results realized by the liquidation, the trial court determined | sthat the liquidator was entitled to a fee of five percent of the liquidation ($1,129,-608.00). Based on the record before this Court as well as considering the exceptional results realized by the liquidation, we find no abuse of discretion in the trial court’s setting the liquidator’s fee at $1,129,608.00.
Assignment of Error No. 2
The appellants contend that the district court erred when interpreting the decision of Judge Pro Tempore Mickey P. Landry that the liquidator’s fee should be five percent of the liquidation’s gross receipts rather than five percent of the sums to be distributed to the owners. The April 18, 2001 judgment stated that the liquidator’s fee should be set at “five percent (5%) of the total partnership assets of Manheim Antique Galleries, An In Commendam Partnership, which shall include all property on hand from the date of inception of the liquidation and any proceeds derived therefrom.” The language of this judgment is clear. Accordingly, this assignment of error is without merit.
Assignment of Error No. 3
The appellants contend that the district court erred when opining that the decision of Judge Pro Tempore Mickey P. Landry was a final judgment and could not be revised. Ordinarily, absent a substantial change in circumstances upon which the fee is based, i.e. fraud, mismanagement, or breach of fiduciary duty, there can be no modifications or revisions of a prior order or judgment fixing the amount of a fee. Succession of McLean, 651 So.2d 920 (La.App. 2 Cir.1995).
IfiOn April 18, 2002, Judge Pro Tempore Mickey P. Landry fixed the liquidator’s fee at five percent of all assets to be calculated by including “all property on hand from the date of inception of the liquidation and any and all proceeds therefrom.” On October 11, 2002, a hearing on the motion to homologate the provisional accounting, which included the application of the five percent liquidator’s fee, was held before Judge Rosemary Ledet. At that hearing, the appellants requested that the trial court review the prior judgment of Judge Landry because they believed it was influenced by prejudice on the part of Judge Landry; however, the appellants filed no motion to reconsider the April 18, 2001 judgment, nor did they file a motion for a new trial or a petition to annul the April 18, 2001 judgment. Judge Ledet stated that she believed the April 18, 2001 judgment to be a final judgment from which no timely appeal had been taken and therefore was not subject to review. However, in her reasons for judgment, she stated that she believed the allegations of prejudice on the part of Judge Landry were “baseless and unsupported by any evidence in the record.” This court dismissed the appeal of the April 18, 2001 judgment. On August 18, 2003, the Supreme Court found that this Court acted prematurely in acting on the motion to dismiss and ordered this Court to refer this motion to the merits.
The issue of whether or not the April 18, 2001 judgment was a final judgment is now moot. This Court has considered both Judge Landry’s judgment and Judge Le-det’s judgment on the merits. Based on the record before this Court, |7we find no error or abuse in discretion regarding the setting and award of the liquidator’s fee.
Assignment of Error No. 4
The appellants contend that the district court erred in not holding that the liquidator’s request for a fee of $480,000.00 was a judicial admission as to the sum which he was entitled. The appellants’ contention *840 ignores the fact that the liquidator continued to perform additional services for a considerable length of time after this fee was requested. Furthermore, the appellants never requested the trial court consider the request for the $480,000.00 fee as a judicial admission. Accordingly, this assignment of error is not properly before this Court.
Assignment of Error No. 5
The appellants contend that the district court (Judge Ledet) erred in not accepting into evidence Cohen proffered exhibits 5 and 6 which indicate that Judge Pro Tempore Mickey P. Landry should have recused himself. The appellants allege that these documents show that counsel for appellants’ law firm (Baldwin and Haspel) were representing clients in nineteen separate cases against the personal interests of Judge Landry. These are nineteen cases where the law firm of LeBlanc, Maples & Wadell, L.L.C. intervened for attorneys’ fees in asbestos related personal injury cases, where the law firm of Landry & Swarr, L.L.C. (where Mickey P. Landry is a partner) undertook the representation of persons previously represented by LeBlanc, Maples & Wadell, L.L.C. The appellants, however, never filed a motion to recuse Judge Landry.
 lsIn order to justify recusal of a judge, bias, prejudice, or personal interest on the part of the judge must be of a substantial nature and be based on more than conclusory allegations. Tamporello v. State Farm Mutual Automobile Ins. Co., 95-458 (La.App. 5 Cir. 11/15/95), 665 So.2d 503. A judge can only be removed upon a finding of actual bias or prejudice; a substantial appearance of impropriety or even a mere appearance of impropriety are not causes for removing a judge. Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 2000-1930, 2000-1931 (La.App. 1 Cir. 9/28/2001), 809 So.2d 1040. Furthermore, a contention that a trial judge should have recused himself will not be considered on appeal where no motion for recusal was made at trial. Campbell v. National Union Fire Ins. Co., 92-592 (La.App. 3 Cir. 12/7/94), 647 So.2d 569. In the instant case, as no recusal motion was ever filed, the issue is not properly before this Court.[4]
Assignment of Error No. 6
The appellants contend that the trial court’s decision awarding the liquidator a fee of five percent is manifestly erroneous. This assignment of error is essentially the same as appellants’ assignment of error number one. As stated earlier, we find no error or abuse of discretion on the part of the trial court awarding the liquidator a fee of five percent.
| ^Assignment of Error No. 7
The appellants contend that the district court erred in accepting into evidence a letter from the Honorable Max N. Tobias, Jr. This leads to the interesting question of how exactly Judge Tobias’s November 13, 2000 letter should be classified. Judge Tobias’s letter was in response to appellants’ counsel, Mr. Rittenberg, requesting a status conference; Judge Tobias was the original district court judge in this case and it was he who appointed Mr. Hammond as liquidator. In his letter, Judge Tobias opined that it was not Mr. Hammond but the parties and their lawyers who were responsible for the *841 delays. This opinion appears to be based on Judge Tobias’s observations while he was the presiding judge on this case. It does not appear therefore that the letter is hearsay. Accordingly, it does not appear that the trial court erred in admitting the letter into evidence.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

.Mr. Hammond was appointed by the Honorable Max. N. Tobias, who at that time was the Judge of Division L of the Civil District Court for the Parish of Orleans.

. After Judge Tobias was elected to the Fourth Circuit Court of Appeal, attorney Mickey P. Landry was appointed Judge Pro Tem-pore of Division L. by the Supreme Court.

. By this time, the Honorable Rosemary Le- *838 det had been elected Judge of Division L.

. When Judge Ledet addressed the appellants' allegations of Judge Landry's bias and improper conduct, she found them "baseless and unsupported by any evidence in the record.” Although this issue is not technically before this Court, based on our review of the record, we concur with Judge Ledet that these allegations are baseless and unsupported by any evidence in the record.